IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEVELOPERS SURETY AND )
INDEMNITY COMPANY, )
 )
              Plaintiff, )
 )
v. )    Case No. 17-2292-JWL
 )
CAROTHERS CONSTRUCTION, INC., )
 )
             Defendant. )
 )
_____)

## **MEMORANDUM AND ORDER**

Carothers Construction, Inc. ("Carothers") entered into a subcontract with Seven Hills Construction, LLC ("Seven Hills") under which Seven Hills was to perform certain work at a project in Kansas. In connection with that project, Developers Surety and Indemnity Company ("DSI") issued performance and payment bonds, as surety, on behalf of Seven Hills in favor of Carothers. Seven Hills defaulted on the subcontract. Carothers subsequently initiated an arbitration proceeding in Mississippi against DSI, in which Carothers has asserted claims against DSI with respect to bonds issued for the Kansas project and for projects in Georgia, South Carolina, and Connecticut.

DSI brought the present action in state court against Carothers, who removed the case to this Court. By its complaint, DSI seeks a declaratory judgment to the effect that it is not required to submit to arbitration in Mississippi on Carothers's claims, and it also seeks a stay of the arbitration and a permanent injunction against the arbitration of the

claims.

This matter presently comes before the Court on DSI's motion to remand the case to state court (Doc. # 8) and Carothers's motion to dismiss or to transfer (Doc. # 4). For the reasons set forth below, the Court **denies** both motions.

**I.     Motion to Remand**

In removing this case to federal court, Carothers invoked the Court's diversity jurisdiction. DSI moves for remand on the basis that the case does not satisfy the requirement that the matter in controversy exceed $75,000. *See* 28 U.S.C. § 1332(a).

DSI argues that Carothers failed to submit evidence with its notice of removal to satisfy the jurisdictional amount. The Supreme Court has not required such evidence, however. In *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), the Court held that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *See id.* at 554. That allegation "should be accepted when not contested by the plaintiff or questioned by the court." *See id.* at 553. If the plaintiff does contest the allegation, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied," in accordance with the specific terms of the removal statute. *See id.* at 553-54; *see also* 28 U.S.C. § 1446(c)(2)(B) (removal is proper "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section

1332(a)") (quoted in *Dart*).

In this case, DSI does not seek monetary relief; instead, it seeks a declaratory judgment and injunction relating to the arbitration initiated by Carothers. In cases involving claims for declaratory or injunctive relief, the Tenth Circuit follows the "either viewpoint rule," which allows the removing party to rely on either the value to the plaintiff or the cost to the defendant of the relief sought. *See Lovell v. State Farm Mutual Auto. Ins. Co.*, 466 F.3d 893, 897 (10th Cir. 2006). DSI suggests in its brief that the outcome of its suit to determine the appropriate forum for Carothers's claims on the bonds has no pecuniary effect because Carothers will have a forum for those claims either way. The Tenth Circuit has implicitly rejected such an argument, however, as it has held that in a case seeking to compel arbitration, the court should look to the possible award in the arbitration to determine the amount in controversy. *See Woodmen of World Life Ins. Society v. Manganaro*, 342 F.3d 1213, 1217 (10th Cir. 2003). The Tenth Circuit has not explicitly extended that holding to suits seeking to enjoin arbitration, but in *Woodmen* it relied on and chose to follow the holding of the Fifth Circuit in *Webb v. Investacorp, Inc.*, 89 F.3d 252 (5th Cir. 1996). *See Woodmen*, 342 F.3d at 1217 (citing *Webb*). In *Webb*, the Fifth Circuit concluded that there is no reason that the same rule should not apply both to suits seeking to compel arbitration and to suits seeking to enjoin arbitration. *See Webb*, 89 F.3d at 256-57. DSI has not argued that the *Woodmen* rule should be not be applied in this case. Accordingly, the Court believes that the Tenth Circuit would apply that rule here, and thus it will do so. Thus, DSI's motion turns on

3

the amount sought by Carothers in the Mississippi arbitration.

In its notice of removal, Carothers alleged that the amount in controversy here exceeds $75,000. The Court concludes that that allegation was plausible in light of DSI's complaint, to which DSI attached Carothers's arbitration demand. In that demand, Carothers stated that it asserted claims on bonds issued by DSI for four projects, including the Kansas project; that its total claims exceeded $4,000,000; and that DSI had already determined that it would sustain an additional loss of $380,342 on the Kansas bonds. DSI argues—and points to evidence that purports to show—that Carothers has never made a formal claim to it on the bonds for the Kansas project. The relevant issue, however, is the amount sought by Carothers in the arbitration.[1] In the arbitration demand, Carothers has plainly asserted a claim for monetary relief from DSI relating to the Kansas project, as it claims that Seven Hills defaulted and that DSI has paid only part of the amount due to Carothers as damages.

DSI also attempts to take issue with the amount of Carothers's claim in the arbitration demand as it relates to the Kansas project. First, a close reading of DSI's complaint in this case reveals that its request for relief is not limited to the arbitration claims relating to the Kansas project, as DSI seeks relief generally relating to the arbitration as a whole; and Carothers explicitly seeks in excess of $4,000,000 in the arbitration generally. In its briefs in support of remand and in opposition to dismissal,

---

[1]DSI has not explained why the arbitration demand itself would not constitute a claim on the bonds.

4

DSI appears to suggest that only the arbitration of claims relating to the Kansas project are at stake in this action, although it has not explicitly limited its claims in that way. Even if only the arbitration claims relating to the Kansas project are considered, however, the arbitration demand still reveals a claim in excess of $75,000. As Carothers points out, the specific damage amounts claimed with respect to the other three projects total approximately $3,800,000, leaving the plausible interpretation that Carothers seeks over $200,000 for the Kansas project. Moreover, the arbitration demand, in setting out the Kansas claim, refers to DSI's admission that it still owes $380,342 on that claim. DSI argues that the Court should not consider any such admission. The Court must weigh the evidence, however, and Carothers has provided evidence of such an admission. Moreover, the issue is the amount of Carothers's *claim* in arbitration (whether or not it ultimately succeeds on that claim), and the evidence is that Carothers has claimed an amount in excess of $75,000. That is especially true in light of Carothers's demand in the arbitration for attorney fees and punitive damages. *See Woodmen*, 342 F.3d at 1217-18 (claims for attorney fees and treble damages may be considered for purposes of meeting the jurisdictional amount).

Thus, the Court concludes that Carothers plausibly alleged in its notice of removal that the jurisdictional threshold is satisfied here, based on the evidence of the arbitration demand. DSI has not submitted any contrary evidence, either that Carothers does not in fact claim that much or that Carothers cannot recover that much. Thus, the Court also finds by a preponderance of the evidence that the amount-in-controversy requirement is

satisfied in this case. It therefore denies DSI's motion to remand the case to state court.

## II. Motion to Dismiss or to Transfer

DSI's claims in this case are based solely on its argument that it is not required to submit to the arbitration initiated by Carothers. Carothers takes the opposite view, arguing that a written arbitration provision should be enforced against DSI. Based on that argument, Carothers moves either for dismissal of DSI's claims or, in the alternative, for transfer of the case to the United States District Court for the Southern District of Mississippi to allow DSI to be compelled to submit to the arbitration initiated in that state. *See* 9 U.S.C. § 4 (under Federal Arbitration Act, district court may compel arbitration only within its own district); *accord Ansari v. Qwest Communications Corp.*, 414 F.3d 1214, 1219-20 (10th Cir. 2005).

The Federal Arbitration Act (FAA) provides that an arbitration provision in a written commercial contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2. The FAA creates a presumption in favor of arbitration, as the Supreme Court has held that the statute "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor or arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) (footnote omitted). In enforcing this federal

6

policy favoring arbitration, courts apply state-law principles concerning the validity, revocability, and enforceability of contracts, as long as those state-law principles are generally applicable to all contracts and not applicable only to arbitration agreements. *See Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987). The Supreme Court has further stressed, however, that the parties must have agreed to arbitrate the dispute in the first place:

> The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it does not require parties to arbitrate when they have not agreed to do so. Because the FAA is at bottom a policy guaranteeing the enforcement of private contractual arrangements, we look first to whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement. While ambiguities in the language of the agreement should be resolved in favor of arbitration, we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.

*See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 293-94 (2002) (citations and internal quotations omitted). Thus, the Court must determine here whether DSI agreed to arbitrate Carothers's claims on the bonds.[2]

Section 19 of the subcontract between Carothers and Seven Hills for the Kansas

---

[2]The theshold question of whether the parties have agreed to arbitrate is for the court, not the arbitrator, unless the parties have clearly and unmistakable provided otherwise. *See AT&T Tech., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 649 (1986). The arbitration provision at issue here does not refer to the arbitration of that threshold question, and Carothers has not argued that the question of arbitrability should be decided by the arbitrator in this case.

7

project[3] provides as follows:

> Except as otherwise specifically provided therein, all claims, disputes, and other matters in controversy between the Contractor [defined as Carothers] and the Subcontractor [defined as Seven Hills] arising out of or relating to this Subcontract shall be decided by binding arbitration in accordance with the current and application Construction Industry Rules of the American Arbitration Association, unless the parties both agree to different rules and procedures. The sole exception to binding arbitration between the Contractor and Subcontractor is as follows: If the Contractor in good faith believes that any claim, dispute, or matter in controversy with the Subcontractor also involves rights or liabilities of the Owner, Architect, or other third party, then, at the Contractor's sole election, the Subcontractor agrees to resolve such issues in the same forum or proceeding, including arbitration, court, or administrative authority, which has jurisdiction over some or all claims, disputes, and matters in controversy involving the Owner, Architect, or other third party so as to promote economy and avoid inconsistent results.
>
> The Contractor and Subcontractor intend and agree that the foregoing dispute resolution provisions and rights of election given to the Contractor are not independent of nor severable from the remainder of the Subcontract and that such provisions and election rights are supported by the consideration and mutuality of the Subcontract as a whole. The locale for any arbitration or litigation involving the Subcontractor and the Contractor shall be Jackson, Mississippi, unless the Contractor agrees to designate another locale to facilitate joinder of parties, to consolidate claims, or for any other reason.
>
> Should the Contractor through litigation, arbitration, or other means seek to recover on any surety bond given by the Subcontractor under this Subcontract, the Subcontractor and its surety, jointly and severally, agree to pay Contractor all costs, expenses, and attorneys' fees incurred in the investigation, preparation, and trial or hearing of such matters and otherwise reasonably related therein.

---

[3]Although, as noted above, DSI's claims could be interpreted as seeking to halt the arbitration of all four disputes, Carothers has confined its argument to the Kansas subcontract and bonds, and the Court will thus do the same.

8

> If the Contractor and the Subcontractor litigate or arbitrate a monetary claim, not otherwise prohibited by this Subcontract, the party found liable in such proceedings will pay the other party's reasonable and necessary attorneys' fees. . . .

The bonds executed by DSI and Seven Hills relating to the Kansas project do not contain arbitration provisions, but each bond provides that the subcontract between Seven Hills and Carothers "is incorporated by reference herein in its entirety and made an integral part" of the bond. Carothers argues that DSI agreed to arbitrate when it agreed in the bonds to the incorporation by reference of the subcontract and its arbitration provision.

The Court concludes, however, that DSI did not consent in these bonds to the arbitration of Carothers's claims on the bonds. Even assuming that DSI agreed to the incorporation into the bonds of the subcontract's arbitration provision, that provision applies explicitly and clearly only to disputes "between the Contractor and the Subcontractor"—that is, between Carothers and Seven Hills. Thus, by its terms, the arbitration provision does not apply to Carothers's claims on the bonds, which is a dispute between Carothers and DSI.[4]

A number of other provisions in the subcontract and bonds support this plain reading of the arbitration provision. For instance, the arbitration provision's reference to "the Subcontractor" is not reasonably interpreted to refer also to any surety. The

---

[4] By contrast, the same section of the subcontract provides that the subcontractor *and the surety* agree to pay fees if recovery is sought on a bond. If the bonds incorporated that particular provision (an issue the Court does not decide), then DSI thereby agreed to be bound by that obligation to pay fees. The purportedly incorporated arbitration provision, however, does not impose any obligation on a surety.

9

subcontract defines Seven Hills as "the Subcontractor" for purposes of the subcontract. Section 19 of the subcontract, which contains the arbitration provision, later refers specifically to claims on a surety bond and the liability of "the Subcontractor and the surety" for attorney fees and costs, and that reference to the two parties separately indicates that the parties did not intend all references to the former party to include the latter. In addition, the bonds refer to "actions" for payment on the bonds, without any reference to arbitration proceedings, while the subcontract explicitly recognizes the possibility of "litigation" and "trial" of claims on any bond given by Seven Hills. Those references to court proceedings are not necessarily dispositive here, as the arbitration provision contains an exception that allows Carothers at its election to join claims against Seven Hills with claims against a "third party." Nevertheless, such language supports interpretation of the subcontract not to include other parties within a reference to "the Subcontactor."[5]

Finally, although the bonds incorporate by reference the subcontract (and its provision requiring arbitration of disputes specifically between Carothers and *Seven Hills*), DSI did not agree in those bonds to assume any or all obligations of Seven Hills under the subcontract. Rather, DSI agreed to undertake certain obligations in the event

---

[5]Despite Section 19's provision naming Jackson, Mississippi as the location of any arbitration between the contractor and subcontractor, Carothers states in its brief that the subcontract does not designate a place of arbitration. To the extent that Carothers means that no place is designated for an arbitration involving DSI, such argument underscores that references to "the Subcontractor" in Section 19 were not intended to include a surety.

10

of default by Seven Hills.

Thus, because the arbitration provision, by its unambiguous terms, does not reach this dispute, the federal policy in favor of arbitration does not apply, and the FAA does not require that DSI submit to arbitration of the claims on these bonds.

Carothers does not rely on the specific language of the arbitration provision, but rather asks the Court to follow the many other courts that have ruled that a surety or other party did consent to arbitration by agreeing to the incorporation of another contract containing an arbitration provision. For instance, Carothers cites *Developers Surety and Indemnity Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665 (D. Md. 2010), in which the court chose to follow what it considered the majority rule, which it described as follows:

> The First, Second, Fifth, Sixth and Eleventh Circuits and several district courts have held that a surety must arbitrate disputes related to a performance bond where the performance bond specifically incorporated by reference a contract containing an arbitration clause. The Eighth Circuit is the only federal circuit to diverge from this view.

*See id.* at 669-70 (citations omitted). *Resurrection Baptist* is easily distinguished from the present case, however. In that case, the incorporated contract required the arbitration of "[a]ny claim arising out of or related to the Contract." *See id.* at 669. Thus, the case does not provide any basis or argument for a similar result if the arbitration provision is limited explicitly to disputes between other parties. Moreover, as Maryland's highest court recently explained, the cases commonly cited for that so-called majority rule are similarly distinguishable and thus unhelpful, as they involved situations in which the

11

arbitration provision was not expressly limited to disputes between particular parties. *See Schneider Elec. Buildings Critical Sys., Inc. v. Western Surety Co.*, 2017 WL 3205291, at *6 n.5 (Md. July 28, 2017) (citing cases). Accordingly, the Court's decision in this case does not go against any applicable majority rule or the weight of authority.

Carothers also cites *Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F. Supp. 192 (D.N.J. 1990), in which the court required the surety to arbitrate based on the incorporation of an arbitration provision like the one at issue in the present case. *See id.* The court concluded that the Third Circuit would follow the other circuits in requiring arbitration. *See id.* at 195. As explained above, however, those cases from the other circuits did not involve language requiring the arbitration only of disputes between particular other parties. The *Hoffman* court rejected the surety's argument that the arbitration clause applied only to the parties to the incorporated contract, reasoning that many of the cases involved "similar" language. *See id.* at 194. In the cases cited by that court, however, the arbitration provisions were not explicitly applicable only to disputes between the parties to the contract, as in the present case and in *Hoffman*. *See id.* Thus, *Hoffman* is not persuasive, and the Court declines to follow its reasoning.

A state-court case cited by Carothers, *Godwin v. Stanley Smith & Sons*, 386 S.E.2d 464 (S.C. Ct. App. 1989), is similarly distinguishable. In *Godwin*, the arbitration clause applied to disputes specifically between the two parties to the contract. *See id.* at 465. In the contract between the parties to the lawsuit, however, which incorporated by reference the first contract, the plaintiff explicitly agreed that it was "bound" by the

terms of the other contract and that it assumed all obligations of the party subject to the arbitration clause. *See id.* The *Godwin* court chose to follow the reasoning of another court that relied on that language of assumption of obligations. *See id.* at 466 (citing *J.S.&H. Constr. Co. v. Richmond County Hosp. Auth.*, 473 F.2d 212, 213 (5th Cir. 1973)). As noted above, DSI did not agree to assume Seven Hills's obligations under the subcontract with Carothers.

Finally, Carothers points the Court to the recent decision by the federal district court in the related action between these parties (involving the same arbitration initiated by Carothers relating to four different projects) that DSI brought in South Carolina (and which Carothers removed to federal court). In that action, Carothers filed a similar motion to dismiss or to transfer, and the court granted the motion and ordered the case transferred to the Southern District of Mississippi to allow Carothers to seek an order compelling arbitration. *See Developers Surety and Indemnity Co. v. Carothers Constr., Inc.*, 2017 WL 3054646 (D.S.C. July 18, 2017). Looking to South Carolina law, the court chose to follow the ruling of the South Carolina Court of Appeals in *Godwin*, while rejecting DSI's attempt to distinguish *Godwin* on the basis of the assumption-of-obligations language in the incorporating document in that case. *See id.* at *3. In so doing, the federal court relied on the general principle of South Carolina law that the liability of a surety is measured precisely by the liability of the principal. *See id.* The court thus concluded:

> When the Court construes the bonds and the subcontract together as a

13

> whole, it is clear the parties intended to submit disputes to binding arbitration. If DSI did not want to be bound by that term of the subcontract, then DSI should not have guaranteed the performance of the subcontract by issuing bonds incorporating that term.

*See id.*

The Court respectfully disagrees with the reasoning of the federal court in South Carolina. *Godwin* is distinguishable on a material point, as explained above. Even if *Godwin* was intended to apply in the absence of assumption-of-obligations language, however, this Court would not be required to apply such a rule of South Carolina law, as Kansas law would apply here (by virtue of choice-of-law provisions), and Kansas courts have not adopted such a rule. Even though a surety's liability may be coextensive with that of the principal as a general rule, DSI's liability in this case is defined by the terms of the bonds, and although the bonds incorporate the terms of the subcontract, DSI did not assume any or all obligations of Seven Hills under that subcontract.[6] A term of the incorporated subcontract requires arbitration of disputes with Seven Hills, but it does not require arbitration of other disputes. Based on the plain language of the arbitration provision and the other language in the subcontract and the bonds (which other language the South Carolina court declined to address), as discussed above, the Court *cannot* agree with the South Carolina court's statement that the parties clearly intended to submit disputes to binding arbitration.

---

[6]Carothers has not identified any Kansas case holding that a party, by agreeing to the incorporation of a contract by reference, assumes all obligations of one party to that contract.

14

Instead, the Court finds persuasive the reasoning of those courts that have ruled against arbitration despite the incorporation by reference of an arbitration provision, based on the particular contractual language limiting the parties to which the provision applies. *See Liberty Mutual Ins. Co. v. Mandaree Public Sch. Dist. #36*, 503 F.3d 709, 711 (8th Cir. 2007) (citing *AgGrow Oils, L.L.C. v. National Union Fire Ins. Co. of Pittsburgh*, 242 F.3d 777 (8th Cir. 2001)); *Western Surety Co. v. U.S. Eng'g Co.*, 211 F. Supp. 3d 302, 308-11 (D.D.C. 2016); *Island Ins. Co. v. NORESCO, LLC*, 2012 WL 6629588, at *6-7 (D. Haw. Dec. 19, 2012); *Schneider*, 2017 WL 3205291, at *4-6. The Court concludes as a matter of law that DSI did not consent to arbitration of any claims on the bonds by Carothers.

Carothers argues in the alternative that, even if DSI did not consent to arbitration in writing, the arbitration provision should nonetheless be enforced against DSI under a theory of equitable estoppel, as discussed by this Court in *In re Universal Service Fund Telephone Billing Practices Litigation*, 300 F. Supp. 2d 1107 (D. Kan. 2003) (Lungstrum, J.). In that case, the Court noted two equitable estoppel theories under which federal circuit courts have compelled arbitration. *See id.* at 1138-39. One such theory, the "intertwined claims" theory, applies "when the party ordered to arbitrate has agreed to arbitrate disputes arising out of a contract and is suing in reliance upon that contract." *See id.* at 1139 (quoting *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002)). "It is premised on the notion that a party cannot 'have it both ways': it cannot seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which

15

contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *See id.* (internal quotations omitted) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 528 (5th Cir. 2000)). In this case, however, the party seeking to avoid arbitration (DSI) is not the signatory to the arbitration provision, and thus this theory of equitable estoppel does not apply here.

The other theory previously discussed by this Court is the "direct benefits" theory of equitable estoppel, which "allows a non-signatory to be held to an arbitration clause when the non-signatory knowingly exploits the contract and then, during litigation, attempts to repudiate the arbitration clause in the contract." *See id.* (citing cases). "This theory is intended to prevent a non-signatory from embracing a contract, then turning its back on other portions of the contract that it finds distasteful, such as an arbitration clause." *See id.*; *see also, e.g.*, *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417-18 (4th Cir. 2000) ("A nonsignatory is estopped from refusing to comply with an arbitration clause when it receives a direct benefit from a contract containing an arbitration clause."). The Court rejects this theory as well, as Carothers has not shown that DSI has attempted to obtain a direct benefit under the subcontract between Carothers and Seven Hills. On this point, Carothers cites only two 2016 letters from DSI's counsel to Carothers's counsel. Carothers argues that in those letters DSI asserted rights under the subcontract by asserting rights to unpaid balances, rejecting change orders, and asserting defenses with respect to allegedly improper actions by Carothers. In the letters, however, Carothers merely set forth its position

16

concerning its rights and obligations under the bonds, including with respect to the proper amount owed, the legitimacy of a particular change order, and Carothers's alleged failure to mitigate any damages. The letters address potential claims by Carothers against DSI on the bonds (not on the subcontract), and DSI's discussion of its position takes place in that context. Thus, DSI has not attempted to obtain a direct benefit under the subcontract (as opposed to a benefit under the bonds). Moreover, DSI's boilerplate language in one letter that both it and Carothers reserve their respective rights under the subcontract and the bonds does not indicate that DSI has attempted to obtain some specific benefit under the subcontract.[7]

In summary, the Court concludes that DSI did not consent to arbitration of Carothers's claims on the Kansas bonds and that DSI should not be estopped from opposing enforcement of the arbitration provision of the subcontract. The Court therefore denies Carothers's motion to dismiss the action and Carothers's alternative motion to transfer the action to the Southern District of Mississippi.

### III. Alternative Motion to Transfer

Carothers argues that if the Court does not enforce the arbitration provision

---

[7]In its reply brief, Carothers argues that in *Resurrection Baptist Church*, DSI was ruled estopped on similar facts. In that case, however, the court noted that DSI had asserted affirmative claims for breach of the incorporated contract. *See* 759 F. Supp. 2d at 673. Carothers has not shown in the present case that DSI has asserted any rights arising only under the subcontract.

17

against DSI, it should transfer the case to the United States District Court for the Middle District of Georgia, in which one of the original four state-court suits brought by DSI is pending (and the location of the project involving the largest dispute). Carothers argues that "it is in the best interest of the parties and the court system to have all the disputes heard in a single lawsuit rather than four." Carothers seeks transfer pursuant to 28 U.S.C. § 1404(a), which allows a district court to transfer an action to another district in which it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." *See id.*

The Court denies this alternative motion. First, the South Carolina case has already been transferred to the Southern District of Mississippi (to allow for an order compelling arbitration), and thus the four cases will *not* be litigated together. Second, although Carothers argues that the same people are the key witnesses for all four projects, its supporting affidavit states only that the same DSI personnel were involved in the four projects. Moreover, the identity of the witnesses involved in the underlying projects is not relevant, as the present action involves only the arbitrability of the claims on the bonds, and not the claims themselves. Carothers has not identified any witnesses relevant to that specific issue of arbitrability. Finally, since the Court has now rejected Carothers's position that the arbitration provision should be enforced against DSI, it is not clear what issues remain for litigation in this action; thus, Carothers has not shown that transfer of the action at this stage would further interests of convenience or justice.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion to remand the case to state court (Doc. # 8) is hereby **denied**.

IT IS FURTHER ORDERED BY THE COURT THAT defendant's motion to dismiss or to transfer (Doc. # 4) is hereby **denied** in its entirety.

IT IS SO ORDERED.

Dated this 24th day of August, 2017, in Kansas City, Kansas.

<u>s/ John W. Lungstrum</u>
John W. Lungstrum
United States District Judge